## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF INDIANA

SENIOR HEALTH INSURANCE
COMPANY OF PENNSYLVANIA, in
rehabilitation under the supervision
of MICHAEL HUMPHREYS, Acting
Insurance Commissioner of the
Commonwealth of Pennsylvania,

      Plaintiff,

v.

XL SPECIALTY INSURANCE
COMPANY; U.S. SPECIALTY
INSURANCE COMPANY,

      Defendants.

Case No. 1:22-cv-1866-_____-_____

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, the Senior Health Insurance Company of Pennsylvania ("Plaintiff," or "SHIP"), an insurance company in statutory rehabilitation under the supervision of Michael Humphreys, the Acting Insurance Commissioner of the Commonwealth of Pennsylvania ("Humphreys," or the "Commissioner"), for its complaint against Defendants XL Specialty Insurance Co. ("XL Insurance") and US Specialty Insurance Co. ("US Insurance", and collectively with XL Insurance, the "Defendants") alleges as follows:

### Preliminary Statement

      1.    This is an insurance coverage action filed by SHIP, an insurance company in statutory rehabilitation under the supervision of Acting Commissioner Humphreys, seeking (1) damages, or, in the alternative, specific performance, for

breach of contract by SHIP's primary insurance carrier and (2) a declaratory
judgment against SHIP's primary insurance carrier and its excess insurance carrier
to determine the policy of insurance that is applicable to the underlying claim at
issue.

2.      SHIP purchased successive years of primary and excess directors' and
officers' ("D&O") insurance from the same insurers each year. Each policy provides
coverage for claims made and reported during that policy year. In spite of receiving
premiums for each year of insurance, SHIP's primary and excess insurers are trying
to limit their exposure and avoid their obligations under the policies purchased by
SHIP in 2019.

3.      The insurers have wrongfully denied coverage and are incorrectly
asserting that a recently filed claim, involving circumstances reported in the 2019-
2020 policy year, relates back to claims covered in the 2015-2016 policy year. The
effect of this position is that SHIP's primary insurer avoids all liability for coverage
for the recent claim because its 2015-2016 primary policy is exhausted, and the
excess insurer limits its potential exposure to the amount remaining in its 2015-
2016 policy.

4.      More importantly, the remaining limits of the 2015-2016 excess policy
are unfairly eroded, depriving SHIP of the benefits under the 2019-2020 policies for
which it paid valuable premiums.

5.      Plaintiff seeks (1) damages in an amount greater than $75,000, to be
determined at trial, or, in the alternative, an order directing SHIP's insurers to

apply costs/expenses toward the later primary policy, rather than the earlier excess policy, for the breach of contract by the primary insurance carrier, and (2) a declaration that the later primary policy and excess policy, rather than the earlier policies, apply to the payment of the defense costs incurred by former directors and officers in the underlying litigation.

## Jurisdiction

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Pennsylvania and Indiana, on the one hand, and citizens of Connecticut, Delaware, and Texas, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     This Court has jurisdiction to award declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

## Venue

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district and in that a substantial part of the property (namely, the insured risk) that is the subject of the action is situated in this district.

9.     SHIP's principal place of business is located in Carmel, Indiana.

## The Parties

10.    SHIP is a citizen of Pennsylvania and Indiana. It is a stock limited life

insurance company[1] incorporated under the laws of Pennsylvania and with its

principal place of business in Carmel, Indiana. SHIP administers long-term care

insurance policies. SHIP's business is a "closed block," as it has not sold new policies

since 2003.

11.    Humphreys is the Acting Insurance Commissioner of the

Commonwealth of Pennsylvania. The Commissioner was appointed as the Statutory

Rehabilitator of SHIP on January 29, 2020. The Commissioner appears in this

action only in his official capacity as an officer of the Commonwealth charged with

rehabilitating SHIP. SHIP is the real party in interest.

12.    Upon information and belief, Defendant XL Insurance is an insurance

company incorporated in Delaware, having its principal place of business in

Connecticut.

13.    Upon information and belief, Defendant US Insurance is an insurance

company incorporated in Texas, having its principal place of business in Texas.

## Facts

14.    As set forth in more detail below, the parties' dispute and this action

arise because Defendants contend that SHIP's covered claims for payment of

---

[1] A "limited" life insurance company is an insurance company whose authority to write
policies is limited, by statute, to a certain amount. *See* 40 PA. STAT. §621.1–621.2. They can
be formed under both "stock" and "mutual" principles. 40 PA. STAT. §623.1. Under
Pennsylvania law, "stock" insurers, like SHIP, have essentially the same capital structure
as a corporation. *See* PA. L. ENCYCLOPEDIA, *Insurance* §12; 28 U.S.C. §1332(c).

defense costs on behalf of former directors and officers with respect to the lawsuit of *Jessica K. Altman, Insurance Commissioner of the Commonwealth of Pennsylvania in her capacity as the Statutory Rehabilitator of Senior Health Insurance Company of Pennsylvania v. Brian Wegner, Paul Lorentz, Barry Staldine, and Protiviti Inc.*, filed January 28, 2022, in the Commonwealth Court of Pennsylvania, as amended by Plaintiff (the "Humphreys Litigation"), are deemed to have been made in a 2015-2016 policy period, rather than a 2019-2020 policy period, because they involve "interrelated wrongful acts," and are therefore "interrelated claims" (as defined by the policies at issue), specifically Defendants allege the Humphreys Litigation is an "interrelated claim" Securities and Exchange Commission's ("SEC") subpoena in the Matter of Platinum Management (NY) LLC (NY-9271) (the "SEC Subpoena"), (ii) SHIP's former CEO and President, Brian Wegner employment arbitration (the "Wegner Arbitration"), (iii) *Melanie L. Cyganowski, as Receiver, by and for Platinum Partners Credit Opportunities master Fund LP, et al. v. Beechwood Re Ltd., et al.*, filed in the United States District Court for the Southern District of New York (the "PPCO Litigation"), (iv) and/or *Principal Growth Strategies, LLC, et al. v. AGH Parent LLC, et al.*, filed in the Court of Chancery of the State of Delaware (the "PPVA Litigation"), the following matters collectively the SEC Subpoena, Wegner Arbitration, the PPCO Litigation, and the PPVA Litigation are referred to as the "Unrelated Matters."

15.     According to Defendants, SHIP's covered claim regarding the Humphreys Litigation is deemed to have been made during the 2015-2016 policy period.

16.     The primary policy in place for the 2015-2016 policy period is exhausted through payment of "loss" (defense costs and expenses) relating to the Wegner Arbitration, PPCO Litigation, and PPVA Litigation.

17.     The excess policy in place for the 2015-2016 policy is impaired by payment of "loss" relating to the PPCO Litigation and PPVA Litigation and continues to be impaired by defense costs for the PPVA Litigation.

18.     The full policy limits are available to SHIP (after SHIP's payment of the applicable deductible) in the 2019-2020 policies.

19.     Defendants contend that no coverage is available to SHIP with respect to the Humphreys Litigation in the 2019-2020 policy period.

20.     As demonstrated below, however, the Humphreys Litigation does not involve "interrelated wrongful acts" and is not an "interrelated claim" and, thus, should not be deemed to have been during the 2015-2016 policy period.

21.     The events underlying the Unrelated Matters are simply a manifestation of the financial problems wrought upon SHIP by its former directors and/or officers that existed for years before and after such underlying events.

22.     Even if the events underlying the Unrelated Matters had not taken place, SHIP's former directors' and/or officers' broad, far-ranging financial sleights

of hand and actuarial errors and omissions would still have come to light and been at issue in the Humphreys Litigation.

23.     By wrongfully deeming SHIP's the Humphreys Litigation having been made in the 2015-2016 policy period, Defendants  improperly deprive SHIP of the benefit of its bargain in paying insurance premiums for the 2019-2020 policy and the limits of liability thereunder.

<u>The Insurance Policies</u>

24.     Non-party Greenwich Insurance Company ("Greenwich") sold a "Private Company Reimbursement Policy" to SHIP, having policy number ELU141504-15 and a policy period of November 12, 2015, to November 12, 2016 (hereinafter, the "2015 Primary Policy"). A copy of the 2015 Primary Policy is attached hereto as **Exhibit 1**.

25.     The 2015 Primary Policy is a claims-made policy, having an aggregate limit of liability of $10 million.

26.     The 2015 Primary Policy has been exhausted by payments of "loss" relating to the Unrelated Matters.[2]

27.     US Insurance sold an "Excess Indemnity Policy" to SHIP, having policy number 14-MGU-15-A36124 and a policy period of November 12, 2015, to November 12, 2016 (hereinafter, the "2015 Excess Policy"). A copy of the 2015 Excess Policy is attached hereto as **Exhibit 2**.

---

[2] Greenwich refused to cover the SEC Subpoena.

28.    The 2015 Excess Policy has a limit of liability of $10 million and "follows form" to the 2015 Primary Policy, meaning, unless specified otherwise, it incorporates the conditions and terms of the 2015 Primary Policy.

29.    The 2015 Excess Policy's available limits have been reduced by payment of "loss" from the PPCO Litigation and PPVA Litigation and continue to be impaired for the PPVA Litigation.

30.    XL Insurance sold a "Private Company Policy" to SHIP, having policy number ELU164834-19 and a policy period of November 12, 2019, to November 12, 2020 (hereinafter, the "2019 XL Policy"). A copy of the 2019 XL Policy is attached hereto as **Exhibit 3**.

31.    Greenwich and XL Insurance are in the same family of insurance companies held under AXA XL. Accordingly, their respective policies are treated as though the successive policies were issued by the same insurer.

32.    The 2019 XL Policy is a claims-made policy, having an aggregate limit of liability of $5 million.

33.    The 2015 Primary Policy and 2019 XL Policy include substantially the same terms relevant to the current dispute and any differences are noted below.

34.     The 2015 Primary Policy and 2019 XL Policy require the insurers to pay "loss" on behalf of SHIP for amounts paid as indemnification, where required or permitted, to "insured persons" for a "claim" made against them or resulting from a "claim" made against SHIP. This is commonly referred to as D&O coverage.

35.     The 2019 XL Policy is a claims-made policy, insures SHIP for amounts paid as indemnification, where required or permitted, to "insured persons" for a "claim" made against them or resulting from a "claim" made against SHIP. This is commonly referred to as D&O coverage.

36.     "Claim" includes any civil proceeding in court of law or equity. (Ex. 1, 2015 Primary Policy, PDF p. 27 of 40; Ex. 3, 2019 XL Policy, PDF p. 46 of 53.)

37.      The policies define "Insured persons" in each coverage part of the 2019 XL Policy. (Ex. 1, 2015 Primary Policy, PDF p. 27 of 40; Ex. 3, 2019 XL Policy, PDF p. 38 of 53.)

38.     In relevant part, an "insured person" includes any past, present or future directors or officers, or members of the Board of Managers, or employees of SHIP. (Ex. 1, 2015 Primary Policy, PDF p. 34 of 40; Ex. 3, 2019 XL Policy, PDF p. 46 of 53.)

39.     Both primary policies define "interrelated wrongful acts" as "**Wrongful Acts** which are based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related or series of related facts, circumstances, situations, transactions or events." (Ex. 1, 2015 Primary Policy, PDF p. 28 of 40 (bold in original); Ex. 3, 2019 XL Policy, PDF p. 38 of 53 (bold in original).)

40.     The policies define "Wrongful act" in each coverage part of the 2019 XL Policy. (Ex. 1, 2015 Primary Policy, PDF p. 28 of 40.; Ex. 3, 2019 XL Policy, PDF p. 39 of 53.)

41.    In relevant part, a "wrongful act" includes, with respect to any "insured person," any actual or alleged act, error, omission, misstatement, misleading statement, or breach of duty (by reason of his or her status as such), and with respect to SHIP, any actual or alleged act error, omission, misstatement, misleading statement, or breach of duty. (Ex. 1, 2015 Primary Policy, PDF p. 35 of 40; Ex. 3, 2019 XL Policy, PDF p. 47 of 53.)

42.    The 2015 Primary Policy contains an "interrelated claims" provision which states that "All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (C)(1) or, if applicable, GENERAL CONDITIONS(C)(2)." (Ex. 1, 2015 Primary Policy, PDF p. 30 of 40 (bold in original).)

43.    The 2019 XL Policy contains an "interrelated claims" provision which states:

> All **Claims** and all **Compliance Requests** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** or **Compliance Request** and shall be deemed to have been made at the earliest time at which the earliest **Claim** or **Compliance Request** is made or deemed to have been made pursuant to GENERAL CONDITIONS C. 1. a. or, if applicable, GENERAL CONDITIONS C. 1. b.

(Ex. 3, 2019 XL Policy, PDF p. 41 of 53 (bold in original).)

44.    US Insurance also sold SHIP  an "Excess Indemnity Policy", having policy number 14-MGU-19-A48167 and a policy period of November 12, 2019, to

November 12, 2020 (hereinafter, the "2019 US Excess Policy"). A copy of the 2019 US Excess Policy is attached hereto as **Exhibit 4**.

45.    The 2019 US Excess Policy has a limit of liability of $5 million and "follows form" to the 2019 XL Policy, meaning, unless specified otherwise, it incorporates the conditions and terms of the 2019 XL Policy.

46.    The 2015 Excess Policy and 2019 US Excess Policy include substantially the same terms relevant to the current dispute and any differences are noted below.

47.    In all respects relevant and material hereto, the 2019 US Excess Policy follows form to the 2019 XL Policy, such that the scope of coverage available to SHIP and the exclusions therefrom are the same under either policy.

<u>The Unrelated Matters</u>

48.    In September 2016, SHIP received a subpoena from the SEC seeking documents and information in connection with the SEC's investigation of a number of entities collectively referred to as "Beechwood," as well as entities collectively referred to as "Platinum Funds" and/or "Platinum Partners" entities.

49.    Beechwood Re was a group of reinsurance and asset management companies formed by the principals of the defunct hedge fund Platinum Partners.

50.    SHIP entered into a series of investments with Beechwood Re and its related entities, in addition to entering into Investment Management Agreements with BAM Administrative Services, a subsidiary of Beechwood Re.

51.     Unfortunately for SHIP and other Beechwood investors, the SEC's investigation (and subsequent lawsuits set forth below) revealed a large financial fraud being perpetrated by Beechwood and Platinum Partners and/or its management upon their investors and investment funds, from which SHIP suffered significant financial impairment.

52.     In September 2016, SHIP provided notice of the SEC Subpoena under the 2015 Primary Policy.

53.     Greenwich denied coverage for the SEC Subpoena alleging it was not a "claim," as defined. However, Greenwich accepted notice of the SEC Subpoena as a "notice of circumstances," back to which any subsequent related claims would be deemed related.

54.     After receipt of the subpoena, and pending its investigation into the Beechwood Re relationship, SHIP placed its CEO and President, Brian Wegner ("Wegner") on leave.

55.     As a result of SHIP's internal investigation, on or about December 7, 2016, SHIP dismissed Wegner from employment for issues related and unrelated to the Beechwood Re relationship.

56.     Subsequently, Wegner filed the Wegner Arbitration, which was ultimately resolved.

57.     SHIP provided notice of the Wegner Arbitration to Greenwich.

58.     Greenwich accepted coverage for the Wegner arbitration and determined that it was related to the notice of circumstances provided in November

12

2016 with respect to the SEC Subpoena. As such, the Wegner Arbitration was a "claim" triggering coverage under the 2015 Primary Policy.

59.    In December 2018, SHIP was named as a defendant in the PPCO Litigation and provided notice of the PPCO Litigation to Greenwich.

60.    The PPCO Litigation plaintiffs allege, *inter alia*, that the defendants, including Beechwood entities and Platinum Partners insiders, created a fraudulent reinsurance and investment advisory company (Beechwood), from which Beechwood and the Platinum Partners insiders illegally acquired millions of dollars in improper management fees, incentive fees, false profits, and other remuneration.

61.    The PPCO Litigation plaintiffs baselessly alleged that SHIP knowingly participated in the Beechwood/Platinum Partners "Ponzi scheme" in using new money to prop up the older investments in the Platinum Partners' failing portfolio companies.

62.    The PPCO Litigation plaintiffs also baselessly alleged that SHIP fraudulently transferred valueless assets to certain plaintiffs via a series of transactions between the fall of 2015 and spring of 2016 while claiming that said assets were worth tens of millions of dollars.

63.    The PPCO Litigation plaintiffs' baseless causes of action against SHIP were common law fraud, aiding and abetting breach of fiduciary duty, fraudulent conveyances, federal securities fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

64.     The PPCO Litigation plaintiffs sought remedies of unspecified actual and punitive damages, avoidance and recovery of fraudulent transfers, treble damages pursuant to RICO, restitution, and attorneys' fees and costs.

65.     SHIP provided notice of the PPCO Litigation to Greenwich/XL Insurance on or about January 8, 2019.

66.     Greenwich/XL Insurance accepted coverage for the PPCO Litigation and determined that it was related to the notice of circumstances given for the SEC Subpoena and, therefore, was covered under the 2015 Primary Policy.

67.     The PPCO Litigation has been resolved and is no longer ongoing.

68.     In July 2019, SHIP was named as a defendant in the PPVA Litigation and provided notice to Greenwich.

69.     The PPVA Litigation concerns a narrow aspect of the Beechwood/Platinum Partners "Ponzi scheme," and involves the so-called "Agera Note" and a series of allegedly misleading statements and/or representations and/or fraudulent transactions and agreements spanning May 2016 to January 2017 (collectively referred to as the "Agera Transactions").

70.     The Agera Note was convertible into 95% of the equity of a holding company owning a subsidiary valued in an agreed-upon range of $250 million to $300 million.

71.     In summary, the PPVA Litigation plaintiffs baselessly allege that SHIP took part in the Agera Transactions with knowledge of the Beechwood/Platinum Partners fraudulent scheme(s), which resulted in SHIP and

the other defendants unjustly benefitting from an intentionally misleading and/or fraudulent exchange of the Agera Note at the expense of the plaintiffs.

72.    The PPVA Litigation plaintiffs' baseless causes of action against SHIP are aiding and abetting breach of fiduciary duty and corporate waste, unjust enrichment, breach of contract, "fraudulent trading" with intent to injure creditors, and for a constructive trust over proceeds generated by/from the Agera interests.

73.    The PPVA Litigation plaintiffs seek remedies of monetary damages, interest, and disgorgement.

74.    SHIP provided timely notice of the PPVA Litigation to Greenwich/XL Insurance in 2019. Greenwich accepted coverage for the PPVA Litigation and determined that it was related to the PPCO Litigation and, therefore, was covered under the 2015 Primary Policy.

75.    The PPVA Litigation is ongoing.

76.    The Humphreys Litigation mentions the acts underlying the PPCO Litigation and PPVA Litigation only in recognizing that they form but a small part of the much broader allegations therein (by the rehabilitator standing in the shoes of SHIP itself) of long-standing, far-reaching mismanagement of SHIP by Wegner and other officers and directors since 2008.

77.    As alleged in the Humphreys Litigation, beginning sometime after November 2008 (some years before SHIP is baselessly alleged to have known of or participated in the Beechwood/Platinum Partners Ponzi scheme), SHIP's former officers and/or directors failed to appropriately and adequately manage SHIP's

financial performance. In an effort to avoid personal culpability for SHIP's poor financial position, SHIP's former officers and/or directors then caused the company to participate in risky investments and actuarial practices to SHIP's detriment.

78.    By way of example, the Humphreys Litigation alleges that SHIP's former officers and/or directors were aware of SHIP's underpricing of premiums due to underestimation of future policy liabilities based on actuarial projections utilizing faulty assumptions that understated morbidity, overstated morbidity improvement, overstated mortality, and overstated policy lapse and termination dates. These allegations do not relate in any way to the PPCO Litigation or the PPVA Litigation.

79.    One example of SHIP's former directors' and/or officers' utilizing faulty morbidity assumptions and/or overstating morbidity improvement and mortality can be demonstrated by briefly addressing SHIP's former directors' and/or officers' interactions with and oversight of SHIP's then-outside actuarial service provider Milliman. SHIP's former directors and officers permitted Milliman to utilize faulty assumptions, which led to erroneous actuarial reports, memoranda, and opinions that, in turn, resulted in gross understatements of SHIP's future liabilities.

80.    SHIP's gross understatements of liabilities appeared in SHIP's official Annual Statements for, at least, the years 2014, 2015, 2016, 2017, 2018, and 2019.

81.    SHIP's gross understatements of liabilities naturally resulted in overstatements of SHIP's financial strength by creating the appearance of surpluses that did not exist for, at least, the years 2014, 2015, 2016, 2017, and 2018.

82.    The Humphreys Litigation alleges that SHIP's former officers and/or directors operated in concert to oversee and maintain an enterprise that overstated SHIP's projected investment income and failed to acknowledge and properly account for lower-than-anticipated yields and other unfavorable investment results.

83.    The Humphreys Litigation also alleges that SHIP's former officers and/or directors generally made poor investment transactions due to insufficient due diligence, oversight, and/or protection against loss to SHIP, including but not limited to investments in Roebling Re. The Roebling Re transactions are not related to the PPCO Litigation or PPVA litigation.

84.    The Roebling Re transactions involved a purported reinsurance agreement with Roebling Re, which allowed SHIP to reduce its statutory reserves on the theory that the reinsurer would fund excess losses, whereas SHIP's former officers and/or directors knew Roebling Re would not, in fact, be able to perform its reinsurance obligations.

85.    The Humphreys Litigation's references to the scheme(s) underlying the PPVA Litigation and/or the PPCO Litigation (which, again, began in or about 2015) make up only a small part of the negligent conduct and abdication of duties that is the subject matter of the Humphreys Litigation.

86.    The Humphreys Litigation alleges that SHIP's former officers and/or directors also operated in concert to mislead the Pennsylvania Insurance Department ("PID") in overseeing and maintaining an enterprise that initiated, designed, contributed to, oversaw, maintained, and/or failed to report to the PID,

the grossly understated future liabilities and the grossly overstated projected investment income.

87.    The Humphreys Litigation further alleges that such concerted activity was ongoing, deliberate, and sought to evade discovery, scrutiny, oversight, and/or intervention by the PID.

88.    Specifically, SHIP's former officers and/or directors also sought unsuccessfully to evade oversight and/or intervention by PID by seeking to either re-domesticate SHIP or to convert SHIP to a property and casualty company.

89.    In summation, the Humphreys Litigation alleges that SHIP's former officers and/or directors undertook a management enterprise that caused injury to SHIP by, *inter alia*:

a.    their oversight and maintenance of the interactive process with Milliman that resulted in grossly understating future liabilities of SHIP;

b.    working with investment advisors to conceive of and implement various transactions that cost SHIP millions of dollars in losses;

c.    misrepresenting SHIP's financial condition;

d.    designing the Roebling Re transactions to avoid the requirement of PID approval while creating the false appearance that SHIP had reinsurance protection for excess losses that it did not in fact have;

e.    seeking to convert SHIP to a property and casualty company to avoid PID intervention;

18

f.    seeking to re-domesticate SHIP in a different state to avoid PID
      intervention;

g.    failing to alert the trustees and the PID of Wegner's self-dealing and
      unwaivable financial conflicts; and

h.    failing to alert the trustees and the PID of Wegner's inexcusable
      personal failures that directly injured SHIP.

90.    Said management enterprise and its impacts to SHIP's business
operations, according to the Humphreys Litigation, operated/occurred from at least
2014 until SHIP was placed in rehabilitation in January 2020.

91.    The causes of action in the Humphreys Litigation against the former
director and officer defendants are breach of fiduciary duty, civil conspiracy,
negligence, and negligent misrepresentation, which are completely distinct causes
of action from those alleged in the PPCO Litigation and PPVA Litigation.

92.    The remedies sought in the Humphreys Litigation are monetary
damages in an amount in excess of $500 million, that damages be assessed on a
"deepening insolvency" basis, and reasonable attorneys' fees and costs.

93.    In November 2020, SHIP provided notice of circumstances that could
give rise to a claim to the Defendants (under the 2019 XL Policy and 2019 US
Excess Policy). The notice of circumstances explained that the statutory
rehabilitator (then Jessica K. Altman), on behalf of SHIP, was investigating
potential wrongdoing by the Directors and Officers of SHIP and included a list of
possible failures and misconduct on the part of the Directors and Officers.

94.    The Defendants accepted the letter as a notice of circumstances.

95.    SHIP provided notice of the Humphreys Litigation to XL Insurance in or about February 2022. Greenwich accepted coverage for the Humphreys Litigation and determined that it was related, not to the notice of circumstances provided by SHIP in November 2020, but to the notice of circumstances with respect to the SEC Subpoena, the PPCO Litigation, and the PPVA Litigation and, therefore, was covered under the 2015 Primary Policy.

96.    The Humphreys Litigation is ongoing.

<u>The Coverage Dispute</u>

97.    After the Humphreys Litigation was filed, one defendant therein, Wegner, a former SHIP President, CEO, and Director, sought payment of his defense costs for the Humphreys Litigation from SHIP pursuant to his employment agreement.

98.    SHIP agreed that payment of defense costs to Wegner pursuant to the terms and conditions of his employment agreement was permitted and/or required.

99.    Shortly thereafter, in February 2022, SHIP provided notice to XL and sought XL Insurance's agreement that XL Insurance would pay/reimburse Wegner's defense costs on behalf of SHIP under the 2019 XL Policy based on the prior November 2020 notice of circumstances.

100.    Subsequent to that, SHIP also provided notice to US Insurance and sought US Insurance's agreement that it would pay/reimburse Wegner's defense

costs on behalf of SHIP under the 2019 US Excess Policy upon erosion of the underlying limits (i.e., the $5 million in policy limits for the 2019 XL Policy).

101.    On or about March 11, 2022, XL Insurance issued a denial letter to SHIP, contending that the "interrelated claims" and "interrelated wrongful acts" provisions of the 2019 XL Policy operated to exclude coverage for Wegner's defense costs related to the Humphreys Litigation under the 2019 XL Policy, and instead, XL Insurance stated that coverage was only available to SHIP under the 2015 Primary Policy as the covered claims related to the Humphreys Litigation were deemed made thereunder. As the 2015 Primary Policy is exhausted, XL Insurance disclaimed any liability for the Humphreys Litigation. A copy of XL Insurance's denial letter is attached hereto as **Exhibit 5**.

102.    On or about April 20, 2022, US Insurance issued a denial letter to SHIP, contending that the "interrelated claims" and "interrelated wrongful acts" provisions of the 2019 US Excess Policy operated to exclude coverage for Wegner's defense costs related to the Humphreys Litigation under the 2019 US Excess Policy, and instead, US Insurance stated that coverage was only available to SHIP under the 2015 Excess Policy as the Humphreys Litigation is deemed related to the notice of circumstances with respect to the SEC Subpoena. A copy of US Insurance's denial letter is attached hereto as Exhibit 6.

103.    Specifically, US Insurance's denial letter asserted that SHIP's covered claim regarding the Humphreys Litigation was deemed made under the 2015

Primary Policy, which had already been exhausted, and/or to which the 2019 US Excess Policy would not apply.

104.    As of the date of filing, SHIP has paid, and Defendants have refused to count such amounts toward SHIP's deductible under the 2019 XL Policy, in excess of $190,000 in defense costs on behalf of Wegner. Such amount has also wrongfully been considered to erode policy limits available to SHIP under the 2015 Excess Policy.

## Count I – Declaratory Judgment

## (Against XL Insurance and US Insurance)

105.    Plaintiff repeats and realleges paragraphs 1 through 104 hereof, as if fully set forth herein.

106.    A case or actual controversy exists in this matter because Defendants have formally denied their obligation to SHIP to pay/reimburse amounts that SHIP has paid in defense costs on behalf of Wegner in the Humphreys Litigation.

107.    SHIP has incurred and/or paid defense costs on behalf of Wegner in the Humphreys Litigation in an amount in excess of $190,000, as of the time of filing.

108.    SHIP seeks a declaration that the 2019 XL Policy, and the 2019 US Excess Policy once triggered, rather than the 2015 Primary Policy and the 2015 Excess Policy, apply to SHIP's covered claims with respect to the Humphreys Litigation.

**Count II – Breach of Contract (Against XL Insurance only)**

109.    Plaintiff repeats and realleges paragraphs 1 through 108 hereof, as if fully set forth herein.

110.    The 2019 XL Policy is a contract of insurance between XL Insurance and SHIP.

111.    At all times material hereto, SHIP has satisfied any and all conditions precedent to its entitlement to insurance coverage under the 2019 XL Policy.

112.    XL Insurance has breached the 2019 XL Policy by denying coverage to SHIP thereunder, considering SHIP's covered claim regarding the Humphreys Litigation to be an "interrelated claim" to the SEC Subpoena, the Wegner Arbitration, PPVA Litigation, and/or the PPCO Litigation, deeming SHIP's covered claim regarding the Humphreys Litigation to have been made under the exhausted 2015 Primary Policy, and refusing to acknowledge that SHIP's payment of defense costs on behalf of Wegner in the Humphreys Litigation against SHIP's deductible under the 2019 XL Policy in a corresponding amount.

113.    Because of XL Insurance's breach, Plaintiff has incurred in excess of $190,000 in damages, in the form of defense costs incurred and/or paid by SHIP on behalf of Wegner in the Humphreys Litigation, which XL Insurance has improperly refused to consider having been made in satisfaction of SHIP's deductible under the 2019 XL Policy.

114.    More specifically, by allocating any defense costs incurred and paid by SHIP on behalf of Wegner in the Humphreys Litigation to the 2015 Excess Policy

rather than the 2019 XL Policy, Plaintiff is uniquely damaged by having erroneously eroded limits under the 2015 Excess Policy (for which there is still at least one existing claim eroding its limits and likely to exhaust its limits) and being denied coverage under the 2019 XL Policy, which has full, unimpaired limits.

**THEREFORE**, Plaintiff requests judgment as follows:

A.    On Count One, a declaration that the 2019 XL Policy, and once triggered, the 2019 US Excess Policy, rather than the 2015 Primary Policy and the 2015 Excess Policy, apply to SHIP's covered claims with respect to the Humphreys Litigation.

B.    On Count Two, (i) an award of damages in an amount to be determined at trial, but in no event less than $190,000, or (ii) in the alternative, an order directing XL Insurance to apply SHIP's costs/expenses with respect to the Humphreys Litigation toward the 2019 XL Policy, rather than the 2015 Excess Policy; and

C.    Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: September 21, 2022          Respectfully submitted,

/s/ *Gregory M. Gotwald*          /
Gregory M. Gotwald (Atty. No. 24911-49)
Christopher E. Kozak (Atty. No. 35554-49)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202
(317) 637-0700
ggotwald@psrb.com
ckozak@psrb.com

*Attorneys for Plaintiff, the Senior Health Insurance Company of Pennsylvania, in rehabilitation under the supervision of Michael Humphreys, Acting Insurance Commissioner for the Commonwealth of Pennsylvania*

**EXHIBIT INDEX**

| Exhibit Number | Description |
|---|---|
| 1 | Greenwich Insurance Company Private Company Reimbursement Policy, Policy No. ELU141504-15, Policy Period: 11/12/2015 to 11/12/2016 |
| 2 | U.S. Specialty Insurance Company Excess Indemnity Policy, Policy No. 14-MGU-15-A36124, Policy Period: 11/12/2015 to 11/12/2016 |
| 3 | XL Specialty Insurance Company Private Company Policy, Policy No. ELU164834-19, Policy Period: 11/12/2019 to 11/12/2020 |
| 4 | U.S. Specialty Insurance Company Excess Indemnity Policy, Policy No. 14-MGU-19-A48167, Policy Period: 11/12/2019 to 11/12/2020 |
| 5 | XL Specialty Insurance Company denial letter dated March 11, 2022 |
| 6 | U.S. Specialty Insurance Company denial letter dated April 20, 2022 |